**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SIRONA DENTAL SYSTEMS, LLC, *et al.*     :
                                                  :
          v.                                    :         Civil No. CCB-12-1253
                                                    :
                                                    :
STEVENSON GROUP, INC. *et al.*            :

## MEMORANDUM

Plaintiffs Sirona Dental Systems, LLC, and Schick Technologies, Inc., (collectively, "Sirona") filed this action for breach of contract against defendants Stevenson Group, Inc., ("SGI") and Steven and Sylvia Carlin ("the Carlins"). Mrs. Carlin was SGI's sole shareholder, director, and officer, and Mr. Carlin was an employee of the firm, which is apparently insolvent and defunct. Sirona has filed a motion for summary judgment seeking $339,298.62, the amount Sirona allegedly paid SGI for services that were never performed. For the reasons stated below, Sirona's motion will be granted in part and denied in part.

## BACKGROUND

The material facts in this case are mostly undisputed. In early 2012, Sirona contracted with SGI to manage its participation in dental industry trade shows scheduled to take place between April and November 2012. Those services were, by and large, never performed, although Sirona advanced SGI over $300,000 for such services and related equipment. On the morning of the first trade show that was scheduled to occur, SGI informed Sirona that it was shutting down and that it had no funds to operate. Sirona ultimately contracted with another trade show service provider, DCI, to perform the same services it sought from SGI so that Sirona could participate in the trade shows. Sirona also points to undisputed evidence that the Carlins, who operated SGI, continued to pay themselves during the period of time at issue here, when

Mrs. Carlin has stated SGI had liabilities well in excess of its assets. (*See* Sylvia Carlin Dep., ECF No. 27-6, at 10, 42-43, 99-109, 132, & 136-37).  Sirona subsequently filed this action and seeks, in its amended complaint, damages for breach of contract and conversion.

## ANALYSIS

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## I. Breach of Contract

While SGI appears to suggest, in a footnote, that the invoices Sirona paid in advance of SGI performing or paying for the services the invoices enumerated were not enforceable contracts, (*see* Defs.' Opp., ECF No. 28-3, at 7 n.2), the only substantive argument in its opposition memorandum regarding the invoices concerns a dispute over the amount of money Sirona paid SGI for which no services were provided. Thus, SGI has advanced no challenge to Sirona's claim that it is entitled to reimbursement for SGI's failure to perform on the invoices which were, if not express agreements, implied-in-fact contracts. *See, e.g.*, *Mohiuddin v. Doctors Billing & Management Solutions, Inc.*, 9 A.3d 859, 864 (Md. App. 2010) ("[I]mplied-in-fact contracts are actual contracts . . . 'that can be seen in [the parties'] conduct rather than in an explicit set of words.'") (quoting *Mogavero v. Silverstein,* 790 A.2d 43, 52 (Md. App. 2002)). Sirona's advance payment of tens of thousands of dollars on invoices it received from SGI listing services SGI represented it would provide or would have provided in exchange for such payments unequivocally demonstrates both parties' "mutual agreement and intent to promise[.]" *See id.* at 865 (quoting Williston on Contracts, § 1.5 (1990)).

Otherwise, SGI argues that Sirona is not entitled to judgment as a matter of law because there is a material dispute concerning the amount of money Sirona is owed for services not performed. Sirona has calculated an amount of $339,298.62 it paid SGI for which it received nothing. SGI argues that $19,000 in services would have been reflected in reconciliation invoices that were never provided to Sirona, and that Sirona is wrongly including an additional $31,072.75 in charges for which Sirona received invoices from SGI that Sirona never paid.

Accordingly, there is no genuine dispute that SGI is liable for breach of contract and that Sirona is entitled to judgment as a matter of law in the amount of $289,225.87 in unperformed

services for which it paid. The remaining $50,072.75 of Sirona's claim is still in dispute.[1]

## II. Conversion

On the other hand, the defendants are not liable for conversion. A conversion is "any distinct ownership or dominion . . . over the personal property of another in denial of his right or inconsistent with it." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004) (quotation omitted). As a general rule, "monies are intangible and, therefore, not subject to a claim for conversion." *Allied Inv. Corp. v. Jasen*, 31 A.2d 957, 966 (Md. 1999). A plaintiff may, however, seek "funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction," provided that the transferred money is "sufficiently identifiable[.]" *Id.* at 966-67 (citations and quotations omitted). But, "if a defendant . . . commingles it with other monies, the cash loses its specific identity." *Id.* at 967; *see also Gibbons v. Bank of America Corp.*, 2012 WL 94569, at *9 (D. Md. 2012); *L'Occitane, Inc. v. Tran Source Logistics, Inc.*, 2009 WL 4738073, at *4 (D. Md. 2009).[2] Despite Sirona's arguments to the contrary, *L'Occitane*, like the other cited cases, recognizes the established law in Maryland that commingled funds are no longer subject to a conversion claim, even if they had a specific purpose when they were transferred to the defendant. In *L'Occitane,* the court denied the defendants' motion to dismiss a conversion claim, even though the plaintiffs appeared to concede the disputed funds had been commingled, only because the plaintiffs' complaint alleged the funds had not been commingled and, for the

---

[1] Sirona argues that the court cannot consider SGI's assertion that the $31,072.75 was never paid because SGI did not raise this argument in an "affirmative defense of set-off or counterclaim," but SGI was under no obligation to do so. All it needed to do, which it has done, is adduce evidence disputing Sirona's factual assertion of the amount SGI owes Sirona. *See* Fed. R. Civ. P. 56(c).

[2] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

purposes of ruling on that motion, the court was obligated to accept the complaint's allegations as true. *See* 2009 WL 4738073 at *4.

Here, it is undisputed that SGI commingled all of the funds it received from its customers, including Sirona, and, thus, that the funds lost their specific identity when they were deposited into SGI's general operating account. (*See* Carlin Aff., ECF No. 28-5, ¶¶10-16). Even though most of the funds were to be used for specific purposes—to pay various costs and vendors—because the funds have been commingled, and Sirona points to no obligation SGI had to put the money in a separate or segregated account, the transferred funds are no longer subject to a conversion claim. *See Darcars*, 821 A.2d at 833 n.3 (because defendant "did not have an obligation to return the specific bills" used for down payment on a car, the plaintiff "should have maintained the action for breach of contract" to recover the payment).

### III. Personal Liability of Mrs. Carlin[3]

In Maryland, "shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity." *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 340 A.2d 225, 234 (1975) (internal citations omitted). "When a person or entity exercises such extensive control over a corporate entity so as to make the latter a mere instrumentality of the former, courts have the power to disregard the corporate fiction to deal with the underlying reality by applying the so-called 'alter ego' doctrine." *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (quoting *Dixon v. Process Corporation*, 382 A.2d 893, 898–899 (Md. App. 1978)). Where an individual exercises "complete domination, not only of the finances, but of the policy and business practice

---

[3] The evidence shows that Mr. Carlin was an employee, but not an officer or shareholder, of SGI. Thus, it appears unlikely that he could be held personally liable for SGI's breach even if the corporate veil is pierced.

in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will[,] or existence of its own," Maryland courts will pierce the corporate veil when "such control was used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights." *Hildreth v. Tidewater Equipment Co., Inc.*, 838 A.2d 1204, 1210 (Md. 2003) (brackets and citation omitted). "[S]ome of the factors commonly considered, when dealing with a single corporation, are (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records." *Id.*

Although Sirona has adduced significant evidence to support piercing SGI's corporate veil, because a plaintiff must establish such facts by clear and convincing evidence, summary judgment would be inappropriate. *See Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 728 A.2d 783, 789-91 (Md. 1999). The record strongly suggests that the Carlins treated SGI as their "alter-ego" for their own benefit. As the sole officer, director, and shareholder, Mrs. Carlin exercised complete dominion over the corporation, its assets, and its operation. This fact, on its own, would not support a finding of personal liability against Mrs. Carlin, but in light of the undisputed facts concerning the operation of SGI, it demonstrates that Mrs. Carlin may not have treated SGI as a distinct entity. First, Mrs. Carlin paid herself and her husband hundreds of thousands of dollars between 2010 and 2011 from SGI's general account, outside of normal payroll. (*See* Carlin Dep. at 99-100, 136-37). Second, she based the amount she paid her husband and herself out of SGI not on any set salary but on personal needs. (*Id.* at

10). Third, she loaned herself $150,000 from SGI to avoid income tax. (*Id.* at 42-43). Fourth, she paid her husband and herself nearly $25,000 from SGI during 2012, during the time that SGI failed to perform the services for which Sirona had paid. (Answer, ECF No. 22, ¶ 18). Finally, she engaged in all of these transactions while the company appears to have been insolvent, (Carlin Dep. at 132-34), and while, in all likelihood, she was aware SGI would ultimately be unable to continue operating. SGI had collected most of the payments from Sirona in 2012 as earmarked funds to pay costs and particular vendors and expenses related to trade shows. Yet, it appears that Mrs. Carlin deposited the funds into SGI's general account and used the funds for other purposes. (*See* Carlin Dep. at 127).

Given these facts, there are two independent bases on which the court could pierce SGI's corporate veil. First, Sirona has alleged fraud.[4] In *Colandrea v. Colandrea*, the Court of Special Appeals reversed a trial court's refusal to pierce the corporate veil because the individual defendant there signed a stock redemption agreement in exchange for a promissory note she was found to have had no intention of paying. *See* 401 A.2d 480, 486-87 (Md. App. 1979). Instead, the defendant had incorporated a new business that assumed the old one's operations, leaving the corporation that was bound to the promissory note financially unable to meet its obligations. *Id.* The court found that the "pervasive presence of fraud" in the case was a sufficient basis to disregard the corporate fiction. *Id.* at 487. Here, Sirona has plausibly alleged that Mrs. Carlin, through SGI, fraudulently received hundreds of thousands of dollars in advance payments from Sirona because (1) Mrs. Carlin had already withdrawn hundreds of thousands of dollars from the failing company before making the new agreements in 2012, (2) she admitted using the money

---

[4] Although Sirona dropped a separate claim for fraud against the defendants when it amended its complaint, the amended complaint still contains the same factual allegations of fraud. (*See, e.g.*, Am. Compl., ECF No. 22, ¶¶ 6-8).

she received from Sirona for purposes other than what she had promised, (*see, e.g.*, Carlin Dep. at 109-112, 127), and (3) she informed Sirona SGI was "shutting its doors" on the day of the first trade show SGI had contracted to service. (*See* Am. Compl., ECF No. 22, ¶¶ 6-8). In short, a jury could infer that Mrs. Carlin knew all along SGI could not do what she had promised Sirona through SGI; that, like the defendant in *Colandrea*, she had no intention of following through on SGI's agreement with Sirona; and that, through SGI, she defrauded Sirona to protect her own and her husband's earnings and to pay other financial obligations.

Second, although no court in Maryland has apparently ever pierced the corporate veil to enforce a paramount equity, *see Baltimore Line Handling Co.*, 771 F. Supp. 2d at 554; *see also Residential Warranty Corp.*, 728 A.2d at 789, this is a close question on the present facts, which conceivably could justify piercing the veil on equitable grounds. Mrs. Carlin engaged in highly questionable and self-serving financial practices in running SGI. She appears to have made great efforts to continue personally profiting from SGI even when she likely knew SGI would be unable to meet all of its obligations. Although it is merely persuasive authority, construing South Carolina, not Maryland, law, *Federal Deposit Insurance Corp. v. Sea Pines, Co.* supports Sirona's contention that it was, at the very least, improper for Mrs. Carlin to pay herself so substantially from corporate funds while the company was insolvent. *See* 692 F.2d 973, 977 (4th Cir. 1982). In *Sea Pines*, the court pierced the veil to permit recovery from a corporate parent stockholder where the common directors highly leveraged the subsidiary and favored the parent over other creditors. 692 F.2d at 974. While the situation here is not entirely analogous, Mrs. Carlin was favoring herself and her husband over SGI's creditors as she continued paying her own and her husband's generous, unfixed salaries during an extended period of insolvency. That said, the record does not suggest Mrs. Carlin abruptly drained SGI's accounts before reneging on

its obligations or otherwise siphoned funds or raided the corporate coffers at that time. In short, whether Mrs. Carlin's behavior rose to the wrongful level needed to take the unusual step of ignoring the corporate form and allowing recovery from her personally is a question for the jury.

## CONCLUSION

For the reasons stated above, Sirona's motion for summary judgment will be granted in part and denied in part. The court finds as a matter of law that SGI is liable in the amount of $289,225.87 for breaching its agreements with Sirona and that Sirona cannot recover on its conversion claim. Whether Mrs. Carlin can be held personally liable for SGI's breach, and whether the defendants are liable for the remaining $50,072.75 of Sirona's claim, are outstanding genuine issues of material fact.

A separate Order follows.


July 25, 2013                                          /s/
Date                                         Catherine C. Blake
                                             United States District Judge